UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHAUN A.,<br><br>     Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>     Defendant. | Case No. C21-5003-SKV<br><br>ORDER AFFIRMING THE COMMISSIONER'S DECISION |

  Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Having considered the ALJ's decision, the administrative record ("AR"), and all memoranda of record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

BACKGROUND

  Plaintiff was born in 1974, has a high school diploma, and has worked as a Fred Meyer department manager and warehouse specialist. AR 239-40. Plaintiff was last gainfully employed in February 2016. AR 239.

  In September 2018, Plaintiff applied for benefits, with an amended alleged onset date of December 25, 2016. AR 79-80, 218-19. Plaintiff's application was denied initially and on

reconsideration, and Plaintiff requested a hearing. AR 150-52, 157-65. After the ALJ conducted a hearing in March 2020 (AR 75-119), the ALJ issued a decision finding Plaintiff not disabled. AR 56-68.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**: Plaintiff has not engaged in substantial gainful activity since December 25, 2016.

**Step two**: Plaintiff has the following severe impairments: degenerative disc disease in the lumbar spine (status post surgery) and irritable bowel syndrome.

**Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity ("RFC")**: Plaintiff can perform sedentary work with additional limitations: he cannot climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. He can have occasional exposure to vibration and extreme cold temperatures. He can occasionally use foot controls bilaterally. He requires ready access to bathroom facilities.

**Step four**: Plaintiff cannot perform his past relevant work.

**Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 56-68.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-7. Plaintiff appealed the final decision of the Commissioner to this Court. Dkt. 1.

//

//

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, App. 1.

# LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

# DISCUSSION

Plaintiff argues the ALJ erred in discounting a medical opinion, and also argues that a remand is necessary in light of an unconstitutional removal provision in the Commissioner's appointment and tenure. The Commissioner argues the ALJ's decision is free of harmful legal

error and supported by substantial evidence, and that remand is an inappropriate remedy for any constitutional violation.

### A. The ALJ Did Not Harmfully Err in Assessing the Opinion of Thomas Gritzka, M.D.

Dr. Gritzka examined Plaintiff in December 2019 and wrote a narrative report describing his symptoms and limitations. AR 1140-49. Dr. Gritzka opined that Plaintiff had multiple disabling limitations, such as: he needs to lie down every 30-45 minutes throughout a workday, he would be absent from work six days per month, and he would be off-task 15% of a workday. *See* AR 1149.

The ALJ found that Dr. Gritzka's opinion was supported by his examination notes, but inconsistent with the longitudinal record, which contained many normal findings, documented improvement with treatment, and indicated that Plaintiff could perform many activities (such as household chores, help his son prepare for school, and travel by car) that suggest that he was able to perform sedentary work. AR 65-66.

In assessing Plaintiff's 2018 application for benefits, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported by and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c) 416.920c(a)-(c).

The Commissioner argues that the regulations promulgated in 2017 changed the legal standards previously articulated by the United States Court of Appeals for the Ninth Circuit. *See* Dkt. 28 at 15-18. Under current Ninth Circuit precedent, an ALJ must provide "clear and convincing" reasons to reject an uncontradicted opinion from a treating or examining doctor, and "specific and legitimate" reasons to reject a contradicted opinion from such doctor. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). The Ninth Circuit has not yet addressed the 2017 regulations in relation to its standards for the review of medical opinions. It is not, in any event,

clear that the Court's consideration of the adequacy of an ALJ's reasoning under the new regulations would differ in any significant respect. The new regulations still require ALJs to explain their reasoning with specific reference to how they considered the supportability and consistency factors, 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b), and that reasoning must remain legitimate. *See Thomas S. v. Comm'r of Social Sec.*, No. C20-5083 RAJ, 2020 WL 5494904, at *2 (W.D. Wash. Sept. 11, 2020). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

Plaintiff argues that the ALJ erred in citing normal objective findings as a reason to discount Dr. Gritzka's opinion, suggesting that the Ninth Circuit would prefer to have a medical source interpret findings rather than an ALJ. Dkt. 21 at 11 (citing *Decker v. Berryhill*, 856 F.3d 659, 665 (9th Cir. 2017)). This argument is not supported by *Decker*, however: to the extent that the *Decker* court expresses any preference, it is against *courts* (not ALJs) interpreting raw medical data, in the context of Appeals Council evidence never presented to an ALJ. *See Decker*, 856 F.3d at 665. Plaintiff has not cited any authority indicating that an *ALJ* errs in comparing medical evidence with a medical opinion, and instead seems to concede that the ALJ "is allowed to do this." Dkt. 21 at 11.

Plaintiff goes on to highlight Dr. Gritzka's expertise, which is undisputed, but nonetheless fails to show that the ALJ was required to credit a medical source's opinion based on his status as a medical source. The regulations and Ninth Circuit authority task an ALJ, not a medical source, with considering the medical evidence in order to assess a claimant's RFC and resolving conflicts in the medical record. *See, e.g.*, 42 U.S.C. § 405(b)(1) (directing the

Commissioner to discuss the evidence in a disability determination decision); 20 C.F.R. §§ 404.1520(a)(1)(3) (requiring the Commissioner to consider the evidence in rendering a disability determination), 404.1520c(c)(1)-(2) (directing the Commissioner to address the supportability and consistency of a medical opinion with the record), 404.1529(c)(4) (indicating that the Commissioner compares a claimant's subjective allegations with the objective medical evidence), 404.1545(a)(1) (providing that the Commissioner will assess a claimant's RFC based on all relevant evidence in the entire record); *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province"). For these reasons, Plaintiff has not shown that the ALJ erred in considering whether Dr. Gritzka's opinion was consistent with the objective medical evidence in the record.

Plaintiff goes on to argue that the objective medical evidence cited by the ALJ does not, "in the main[,]" contradict Dr. Gritzka's opinion. Dkt. 21 at 12. Plaintiff cites various findings for the proposition that his condition deteriorated over time (Dkt. 21 at 12-13 (citing AR 376, 479, 580-82, 1162-66)), but these records show that Plaintiff's provider prescribed physical therapy but Plaintiff failed to return to physical therapy and was therefore discharged, and/or that Plaintiff was diagnosed with various conditions. Plaintiff has not explained how these records, which were cited and discussed by the ALJ (AR 63, 65-66), corroborate rather than contradict Dr. Gritzka's opinion. Accordingly, Plaintiff has not shown that the ALJ mischaracterized the record in finding it to be inconsistent with Dr. Gritzka's opinion.

Plaintiff next refers to evidence submitted to the Appeals Council, which post-dates the ALJ's decision, as evidence suggesting that the ALJ misinterpreted the medical record. Dkt. 21 at 13-14 (citing AR 48-52). The Appeals Council evidence does not necessarily support Dr. Gritzka's opinion, however: it references that Plaintiff's pain interferes with his activities of daily living and impacts his quality of life and ability to sleep. *See* AR 51. The Appeals Council evidence does not reference any particular functional limitations, however, and the ALJ's restrictive RFC is not necessarily inconsistent with it. For these reasons, the Court finds that Plaintiff's reference to the Appeals Council evidence does not support his argument that the ALJ erred in discounting Dr. Gritzka's opinion or in finding that the longitudinal medical evidence was inconsistent with that opinion.

Plaintiff also challenges the ALJ's reliance on his activities as inconsistent with Dr. Gritzka's opinion, arguing that the activities were not inconsistent with the limitations Dr. Gritzka described. Dkt. 21 at 14. The Court agrees that Plaintiff's description of his activities at the administrative hearing and in his agency paperwork (AR 264-71, 311-18) corroborates rather than contradicts the limitations identified by Dr. Gritzka. This line of reasoning is therefore erroneous, but is harmless in light of the ALJ's other valid reasons (based on inconsistent medical evidence) to discount Dr. Gritzka's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

**B.     The Procedure for Removal of the Commissioner of Social Security is Unconstitutional but Does Not Invalidate the ALJ's Decision**

Plaintiff contends this case must be remanded because the structure for removing the Commissioner of Social Security violated the separation of powers under Article II of the U.S. Constitution, such that the Social Security Administration's ("SSA") decision to deny Plaintiff

benefits was made by individuals who had not properly been delegated authority to make such decisions.[3]  For the reasons explained herein, the Court agrees with Plaintiff that the Commissioner enjoyed unconstitutional tenure protection, but finds that the unconstitutional provision does not deprive the Commissioner of the authority to issue a decision on Plaintiff's claim and did not result in harm to Plaintiff that requires reversal of the ALJ's decision denying benefits.

                1.       *The Commissioner's Tenure Protection is Unconstitutional*

Removal of the Commissioner of Social Security is governed by 41 U.S.C. § 902(a)(3). Plaintiff argues two recent Supreme Court decisions — *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021) — mandate a finding that the removal clause in § 902 violates the Constitution's separation of powers.  In *Seila Law*, the Supreme Court held the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President.  *Seila Law*, 140 S. Ct. at 2197.

The Supreme Court addressed a removal provision again the following year in *Collins*. There, the Court held a provision limiting the President to removing the director of the Federal Housing Finance Agency ("FHFA") only for cause violated the separation of powers.  *Collins*, 141 S. Ct. at 1783 (holding that "*Seila Law* is all but dispositive").

---

[3] The ALJ who decided Plaintiff's case was appointed by then-Acting Commissioner Nancy Berryhill. *See* SSR 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019). Defendant contends Ms. Berryhill, as Acting Commissioner, was not subject to the same removal provision as Commissioner Saul. The Court need not reach this issue because, as explained below, Plaintiff cannot establish the removal provision at issue here—and the one to which Commissioner Saul *was* subject—caused her harm.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 8

Applying the holdings in *Seila Law* and *Collins* here makes it clear that the provision for removal of the Commissioner of Social Security, 41 U.S.C. § 902(a)(3), violates separation of powers.  The Commissioner, a single officer at the head of an administrative agency, is removable only for cause.  See 41 U.S.C. § 902(a)(3).  This statutory clause suffers from the same defect as the removal provisions at issue in *Seila Law* and *Collins*, and thus violates separation of powers.  See *Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783; *see also* Office of Legal Counsel, *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021).

     2. *The Constitutional Violation Did Not Deprive the Commissioner of the Authority to Resolve Plaintiff's Claim*

Plaintiff contends the remedy for the unconstitutionality of the removal provision in § 902(a)(3) is reversal and remand.  Plaintiff contends the Commissioner's appointment and tenure were unconstitutional because of the removal provision, depriving the Commissioner of the ability to delegate decision-making to the ALJ and Appeals Council who considered Plaintiff's case.  Plaintiff's argument fails.

First, the removal provision is severable.  In *Seila Law*, the Court found the constitutionally defective removal procedure was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the offending removal restriction was erased. 140 S. Ct. at 2209, 2245.[4]  Similarly, if the removal clause in § 902(a)(3) is stricken, the SSA remains fully functional.

---

[4] Four Justices dissented from Chief Justice Roberts's lead opinion holding the CFPB removal provision was unconstitutional, but agreed that "*if* the agency's removal provision is unconstitutional, it should be severed." *Id.* at 2245 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part).

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 9

Second, the removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner. In *Collins*, the Court found the defective removal procedure did not render the FHFA's actions void from the outset. 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.").

        3.     *Plaintiff Cannot Link Any Harm to the Commissioner's Unconstitutional Tenure Protection*

Third, Plaintiff has not shown — and cannot show — that the removal clause in § 902(a)(3) inflicted harm. In *Collins,* the Court found it was "possible for an unconstitutional provision to inflict compensable harm," and remanded to the lower court to determine whether the removal provision "inflicted harm." 141 S. Ct. at 1788–89. In that case, the action challenged by plaintiffs was the directors' adoption and implementation of an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. *Id.* at 1774. The Third Amendment was not subject to full judicial review, *id*. at 1775-76, 1785, and the Supreme Court thus found that fact-finding by the lower courts was required in order to determine whether plaintiffs suffered harm directly as a result of the FHFA director's unconstitutional tenure protection. *See id.* at 1789.

By contrast, in this case the action challenged by Plaintiff is the Commissioner's decision denying benefits: because this decision has been fully reviewed by the Court and found to be free of harmful legal error and supported by substantial evidence, the Court's review of the

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 10

challenged decision indicates that Commissioner Saul's unconstitutional tenure did not result in harm to Plaintiff.  *Cf. id.* at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all— would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference.").  The ALJ's decision here was based upon an uncontested factual record, and the application of established law, including caselaw, which generally cannot be changed by the Commissioner.

Nor does Plaintiff's reference to an unnamed White House official's justification for Commissioner Saul's removal indicate that Plaintiff was harmed.  *See* Dkt. 21 at 6 n.2.  To the extent Plaintiff generally suggests that Commissioner Saul deprived him of due process (Dkt. 29 at 2), there is no support for this claim.  *Cf. Hoye v. Sullivan,* 985 F.2d 990, 992 (9th Cir. 1992) ("The mere allegation of a substantive due process violation is not sufficient to raise a 'colorable' constitutional claim to provide subject matter jurisdiction.").  Although a representative of the President suggested that Commissioner Saul was removed from office in part because he had undermined, politicized, and "reduced due process protections for benefits appeals hearings," this statement does not establish the existence of a due process violation and Plaintiff has failed to identify one.  *See* https://www.cnn.com/2021/07/09/politics/social-security-commissioner-fired-by-biden/index.html (last visited Nov. 4, 2021).  Furthermore, even assuming Commissioner Saul attempted to undermine, politicize, or reduce the process available to a claimant, it is the courts — rather than the Commissioner, the President, or White House officials — that determine whether a claimant received the process due.

This Court has reviewed the ALJ's decision and found no evidence of a due process violation.  Because the Court has, for the reasons explained herein, found that the ALJ's decision

is free from harmful legal error and is supported by substantial evidence, Plaintiff cannot show any connection between the unconstitutional limit on Commissioner Saul's removal and the ALJ's decision denying him benefits. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground.")). Thus, while the removal clause in § 902(a)(3) violates separation of powers, it does not independently require the Court to reverse the ALJ's decision.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 22nd day of November, 2021.

S. KATE VAUGHAN
United States Magistrate Judge